# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2007 APR 13  P 4: 05

CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | * | |
| Dinesh S. Thakur | | |
| 206 Lancaster Court | * | |
| Belle Mead, New Jersey 08502, | | |
| | * | |
| and | | |
| | * | Civil Action No.: |
| STATE OF ARKANSAS *ex rel.* | | |
| Dinesh S. Thakur | * | |
| 206 Lancaster Court | | |
| Belle Mead, New Jersey 08502, | * | |
| | | |
| and | * | **COMPLAINT UNDER FEDERAL** |
| | | **AND STATE FALSE CLAIMS** |
| STATE OF CALIFORNIA *ex rel.* | * | **ACTS** |
| Dinesh S. Thakur | | |
| 206 Lancaster Court | * | |
| Belle Mead, New Jersey 08502, | | **JURY TRIAL REQUESTED** |
| | * | |
| and | | |
| | * | **FILED *IN CAMERA* AND UNDER** |
| STATE OF DELAWARE *ex rel.* | | **SEAL PURSUANT TO** |
| Dinesh S. Thakur | * | **31 U.S.C. § 3730(b)(2)** |
| 206 Lancaster Court | | |
| Belle Mead, New Jersey 08502, | * | |
| | | |
| and | * | **DO NOT ENTER IN PACER** |
| | | **DO NOT PLACE IN PRESS BOX** |
| DISTRICT OF COLUMBIA *ex rel.* | * | |
| Dinesh S. Thakur | | |
| 206 Lancaster Court | * | |
| Belle Mead, New Jersey 08502, | | |
| | * | |
| and | | |
| | * | |
| STATE OF FLORIDA *ex rel.* | | |
| Dinesh S. Thakur | * | |
| 206 Lancaster Court | | |
| Belle Mead, New Jersey 08502, | * | |

*FILED UNDER SEAL*

and                                                    *

STATE OF HAWAII *ex rel.*                              *
Dinesh S. Thakur
206 Lancaster Court                                    *
Belle Mead, New Jersey 08502,
                                                       *

    and                                                *

                                                       *

STATE OF ILLINOIS *ex rel.*                            
Dinesh S. Thakur                                       *
206 Lancaster Court
Belle Mead, New Jersey 08502,                          *

    and                                                *          **FILED *IN CAMERA* AND UNDER
                                                                  SEAL PURSUANT TO**
STATE OF LOUISANA *ex rel.*                            *          **31 U.S.C. § 3730(b)(2)**
Dinesh S. Thakur
206 Lancaster Court                                    *
Belle Mead, New Jersey 08502,
                                                       *

    and                                                *

                                                       *

STATE OF MASSACHUSETTS *ex rel.*                                  **DO NOT ENTER IN PACER**
Dinesh S. Thakur                                       *          **DO NOT PLACE IN PRESS BOX**
206 Lancaster Court
Belle Mead, New Jersey 08502,                          *

    and                                                *

                                                       *

STATE OF NEW HAMPSHIRE *ex rel.*                       *
Dinesh S. Thakur
206 Lancaster Court                                    *
Belle Mead, New Jersey 08502,
                                                       *

    and                                                *

                                                       *

STATE OF NEW MEXICO *ex rel.*                          
Dinesh S. Thakur                                       *
206 Lancaster Court
Belle Mead, New Jersey 08502,                          *

    and                                                *

1

STATE OF NEVADA *ex rel.*    *
Dinesh S. Thakur
206 Lancaster Court    *
Belle Mead, New Jersey 08502,
        and    *

STATE OF TENNESSEE *ex rel.*    *
Dinesh S. Thakur
206 Lancaster Court    *
Belle Mead, New Jersey 08502,
    *

        and    *

STATE OF TEXAS *ex rel.*    *
Dinesh S. Thakur
206 Lancaster Court    *        **FILED *IN CAMERA* AND UNDER
Belle Mead, New Jersey 08502,    *        SEAL PURSUANT TO
        31 U.S.C. § 3730(b)(2)**

        and    *

STATE OF VIRGINIA *ex rel.*    *
Dinesh S. Thakur
206 Lancaster Court    *
Belle Mead, New Jersey 08502,    *        **DO NOT ENTER IN PACER
        DO NOT PUT IN PRESS BOX**

        and    *

STATE OF UTAH *ex rel.*    *
Dinesh S. Thakur
206 Lancaster Court
Belle Mead, New Jersey 08502,    *

        Plaintiffs,    *

        v.    *

Ranbaxy USA, Inc.    *
4801 Executive Park Court B-100
Jacksonville, Florida 32216    *

SERVE ON RESIDENT AGENT:    *
Corporation Service Company
1201 Hays Street    *
Tallahassee, Florida 32301,

***FILED UNDER SEAL***

and                                                    *

Ranbaxy Pharmaceuticals, Inc.                          *
4801 Executive Park Court B-100
Jacksonville, Florida 32216                             *


SERVE ON RESIDENT AGENT:                               *
Corporation Service Company
1201 Hays Street                                       *
Tallahassee, Florida 32301,

                                                       *

        and                                            *

Ranbaxy Laboratories, Inc.                             *    **FILED *IN CAMERA* AND UNDER**
600 College Road East, Suite 2100                           **SEAL PURSUANT TO**
Princeton, New Jersey 08540                            *    **31 U.S.C. § 3730(b)(2)**

SERVE ON RESIDENT AGENT:                               *
Corporation Service Company
830 Bear Tavern Road                                   *
West Trenton, New Jersey 08620,                        *

        and                                            *

Ranbaxy, Inc.                                          *    **DO NOT ENTER IN PACER**
600 College Road East, Suite 2100                           **DO NOT PUT IN PRESS BOX**
Princeton, New Jersey 08540                            *

SERVE ON RESIDENT AGENT:                               *
Ranbaxy, Inc.
Attn: Dipak Chattaraj                                  *
600 College Road East, Suite 2100
Princeton, New Jersey 08540,                           *

        and                                            *

Ohm Laboratories, Inc.                                 *
600 College Road East, Suite 2100
Princeton, New Jersey 08540                            *

SERVE ON RESIDENT AGENT:                               *
Ohm Laboratories, Inc.
600 College Road East, Suite 2100                      *
Princeton, New Jersey 08540,

3                          *FILED UNDER SEAL*

and                                              *

                                                 *                            /

Ranbaxy Laboratories Ltd.
Plot No. 90, Sector 32                           *
Gurgaon 122 001
Haryana, India                                   *

    Defendants.                                  *

    *        *       *       *       *       *       *       *       *       *       *

## INTRODUCTION

Plaintiff-Relator Dinesh S. Thakur ("Relator"), on behalf of the United States of America ("United States") and the States of Arkansas, California, Delaware, Florida, Hawaii, Illinois, Louisiana, Massachusetts, New Hampshire, New Mexico, Nevada, Tennessee, Texas, Utah, and Virginia and the District of Columbia (collectively, the "States"), sues Defendants Ranbaxy USA, Inc., Ranbaxy Pharmaceuticals, Inc., Ranbaxy Laboratories, Inc., Ranbaxy, Inc., Ohm Laboratories, Inc., and Ranbaxy Laboratories Ltd. (collectively "Ranbaxy") and alleges as follows:

1.   This is a qui tam action to recover treble damages and civil penalties on behalf of the United States and the States under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA") and sixteen State-based analogs ("State FCAs"), arising from Defendants' false and fraudulent billing and claims for payment presented to the United States and the States under the Medicare program, the Medicaid program, and other health care benefit and relief programs including, but not limited to, the President's Emergency Plan for AIDS Relief ("PEPFAR") program.

*FILED UNDER SEAL*

2.     Two categories of false claims generally are challenged in the Complaint.  First, Defendants knowingly falsified dossier and other documentation filed with the United States Food and Drug Administration ("FDA") in order to gain approval, including first-to-file ("FTF") status, to sell generic drugs in the United States in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").  Under the Medicare and Medicaid programs, the United States and States subsequently purchased Defendants' generic drugs which were not bioequivalent to the brand drugs, stable, or efficacious to therapeutically treat the medical diseases for which the drugs were prescribed.  Second, Defendants submitted false data to the United States to gain approval for defective, substandard generic antiretroviral ("ARV") drugs which were purchased for Federally appropriated relief programs such as PEPFAR and other initiatives administered by the United States Agency for International Development ("USAID") in order to provide ARV drug treatments to HIV patients in developing countries.  In each instance, Defendants have submitted false and fraudulent claims for payment to Federal and State authorities under health insurance and foreign assistance programs.

3.     This Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2).  It will not be served on Defendants until the Court so orders.  A copy of the Complaint and written disclosure of substantially all material evidence and information Relator possesses have been served on the Attorney General of the United States and the United States Attorney for the District of Maryland contemporaneously herewith pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4.

*FILED UNDER SEAL*

## JURISDICTION AND VENUE

4.     This Court possesses subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. §§ 3730 and 3732.  The Court may exercise personal jurisdiction over Defendants pursuant to Md. Ann. Code Cts. Jud. Proc. Art. § 6-103.

5.     This Court has pendant jurisdiction over the State FCA claims pursuant to 31 U.S.C. § 3732(b) and 28 U.S.C. § 1367.

6.     The Complaint has been filed timely within the period prescribed by 31 U.S.C. § 3731(b).

7.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c) because at least one of the Defendants resides or transacts business in this District.  In addition, the acts proscribed by the Federal FCA were committed by Defendants in this judicial district.

## PARTIES

8.     Relator is a citizen of the United States and a resident of the State of New Jersey.  He resides at 206 Lancaster Court, Belle Mead, New Jersey 08502.  Beginning in June 2003 until April 2005, Relator was the Director of Project & Information Management with Defendant Ranbaxy Laboratories Limited in Gurgaon, Haryana, India.

9.     Pursuant to 31 U.S.C. § 3730(e)(4)(B) and parallel State FCAs, Relator is the "original source" of the information given to the United States regarding Defendants' illegal conduct in violation of Federal and State laws. He has direct and independent

*FILED UNDER SEAL*

knowledge of the allegations set forth herein.  Relator states that, to his knowledge, the information concerning Defendants' misconduct has not been disclosed publicly.

10.  Defendant Ranbaxy Laboratories Limited ("RLL") is a public pharmaceutical company based in India with subsidiaries in the United States. It has a corporate office located at Plot No. 90, Sector 32, Gurgaon 122 001, Haryana, India.  As a generic pharmaceutical company doing business in the United States, RLL and its subsidiaries supply drugs paid in whole or part by Medicare and Medicaid for program beneficiaries. In addition to sales to the Medicare and Medicaid programs, RLL is a major producer of ARV drugs purchased by the United States under Federal programs, such as PEPFAR. Defendant RLL claims to possess more than 110 approved or tentative abbreviated new drug applications ("ANDA") with FDA, including at least eleven "Paragraph IV" FTFs.[1]

11.  Defendant Ranbaxy Pharmaceuticals, Inc. ("RPI") is a wholly owned subsidiary of RLL.  Its principal place of business is 4801 Executive Park Court B-100, Jacksonville, Florida 32216.   Its operations in the United States include locations in New Jersey (Princeton and New Brunswick), Jacksonville, Florida, and Gloversville, New York.  RPI sells and distributes generic and brand prescriptions manufactured by RLL with sales in excess of $400 million in 2004.  Upon information and belief, the profits of these sales and those of all United States' subsidiaries of RLL were repatriated to RLL.

---

[1]    Paragraph IV certification is a written certification attesting to the generic drug manufacturer's belief that a patent for a new drug is "invalid or will not be infringed by the manufacture, use, or sale of the drug product for which the application is submitted."  21 U.S.C. § 355(j)(2)(A)(vii)(IV).

*FILED UNDER SEAL*

12.   Defendant Ranbaxy Laboratories, Inc. ("RLI") is a wholly-owned subsidiary of RLL located at 600 College Road East, Suite 2100, Princeton, New Jersey 08540.   It is the branded prescription division of the RLL in the United States.

13.   Defendant Ranbaxy, Inc. ("RI") is a Delaware corporation.   It is the parent corporation of RPI in the United States.

14.   Defendant Ranbaxy USA, Inc. is wholly-owned subsidiary of RLL located at 4801 Executive Park Court B-100, Jacksonville, Florida 32216.

15.   Ohm Laboratories, Inc. ("Ohm") is a subsidiary of RPI.   It is located at 600 College Road East, Suite 2100, Princeton, New Jersey 08540.

16.   At all times hereinafter mentioned, Defendants jointly and severally conspired to submit false claims and statements in connection with the approval, marketing, and sale of generic drugs throughout the United States.

## THE HEALTH CARE AND FEDEARALLY-FUNDED RELIEF PROGRAMS

17.   In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, known as the Medicare program.   Medicare is a health financing program for the elderly.   Entitlement to Medicare is based on age, disability or affliction with end-stage renal disease.   42 U.S.C. §§ 426, 426A.   Medicare is administered by the Center for Medicare and Medicaid Services ("CMS").

18.   Medicare pays for beneficiaries' use of generic drugs under Parts A or D.   Part A covers prescription drugs received by beneficiaries while inpatients at hospitals or skilled nursing facilities during covered stays.   In most instances, payment for the drugs are bundled together with other Medicare Part A reimbursable items.   Part D refers to the

8

new Federal program to subsidize the costs of prescription drugs for Medicare beneficiaries enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act effective January 2006. Under Part D, the United States pays for outpatient prescription drugs of eligible Medicare participants by joining a qualified prescription drug plan or participating in the Medicare Advantage plan.

19. The Medicaid program is a health insurance program for qualified beneficiaries funded by Federal and State monies and enacted pursuant to Title XIX of the Social Security Act. 42 U.S.C. §§ 1396-1396v. Each State is permitted to design its own medical assistance plan. 42 U.S.C. § 1396a. The plans permit medical assistance in the form of outpatient prescription drugs. 42 U.S.C. §§ 1396a(10)(A) & 1396d(a)(12).

20. The PEPFAR program is a Federally-appropriated relief program designed to, among other aspects, provide generic ARV drugs to HIV-infected patients in 120 countries. By early 2006, FDA had approved only 15 ARV products for PEPFAR, three of which are ANDAs filed by Defendants. Congress authorized the creation of an HIV/AIDS Working Capital Fund for the purpose of purchasing ARV drugs. 22 U.S.C. §§ 7612a(1)-(2). Each year, the United States funds the HIV/AIDS Funds "for HIV/AIDS pharmaceuticals and products provides from the HIV/AIDS Fund received from applicable appropriations and funds" of USAID, the Department of Health and Human Services, the Department of Defense, "or other Federal agencies and other sources at actual cost of the HIV/AIDS pharmaceuticals and other products, actual cost plus the additional costs of provide such HIV/AIDSS pharmaceuticals and other products, or at any other price agreed to by the" Coordinator of the United States Government Activities to Combat HIV/AIDS

*FILED UNDER SEAL*

Globally. 22 U.S.C. § 7612a(3). In addition to PEPFAR, the United States has purchased the ARV drugs as a part of other Federally-funded programs such as The Global Fund.

21. Upon information and belief, Defendants submitted false claims for payment under these programs and that payment of the claims was made without knowledge of the falsity.

## FEDERAL AND STATE FALSE CLAIMS ACTS

22. The FCA makes it a violation to knowingly present or cause to be presented to the United States any false or fraudulent claim for payment. 31 U.S.C. § 3729(a)(1). The United States is entitled to recover treble damages and civil monetary penalties for violations. *Id*.

23. It is a violation of the FCA to knowingly make, use, or cause to be used or made, a false or statement to get a false or fraudulent claim paid or approved by the United States. 31 U.S.C. § 3729(a)(2).

24. A person who conspires to defraud the United States by getting a false or fraudulent claim allowed or paid violates the statute and is liable for treble damages and civil monetary penalties. 31 U.S.C. § 3729(a)(3).

25. The FCA defines the terms "knowing" and "knowingly" to mean "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).

*FILED UNDER SEAL*

26.   A "claim" is defined to include any request or demand, whether contractual or otherwise, for money which is made to the United States, its representatives, contractors, grantees, or other person if the United States provides or reimburses any portion of the money requested or demanded. 31 U.S.C. § 3729(c).

27.   Relator also asserts claims under State FCAs for the State portion of Medicaid false claims.   The State FCA jurisdictions include Arkansas, § 22-77-901 *et seq.*; California, Cal. Gov't Code § 12650 *et seq.*; Delaware, Del. Code Ann. Tit. 6, § 1201 *et seq.*; Florida, Fla. Stat. § 68.081 *et seq.*; Hawaii, Haw. Rev. Stat. § 661-21 *et seq.*; Illinois, 740 Ill. Comp. Stat. § 175/1 *et seq.*; Louisiana, La. Rev. Stat. Ann. § 46:439.1 *et seq.*; Massachusetts, Mass. Gen. Laws Ch. 12, § 5(A)-(O); New Hampshire, § 167:61-b *et seq.*; New Mexico, N.M. Stat. Ann. §§ 27-14-1 *et seq.*; Nevada, Nev. Rev. Stat. § 357.010 *et seq.*; Tennessee, Tenn. Code Ann. § 71-5-181 *et seq.*; Texas, Tex. Hum. Res. Code § 36.001-36117; Utah, Title 26-20-1 *et seq.*; Virginia, Va. Code Ann. § 8.01-216.1 *et seq.*; and the District of Columbia, D.C. Code § 2-308.13 *et seq.*   The State FCAs contain provisions mirroring those in the FCA set forth above.   Relator's disclosure of substantially all material evidence and information Relator possesses will be served upon State officials as required by State law, including any supplemental disclosure statements.

## FEDERAL REQUIREMENTS FOR GENERIC DRUGS

28.   The Drug Price Competition and Patent Term Restoration Act of 1984, commonly known as the Hatch-Waxman amendments, amended the FDCA by, among other aspects, enacting an ADNA approval process allowing lower-priced generic drugs of

11                            *FILED UNDER SEAL*

previously approved innovator (listed) drugs to be approved and marketed in the United States.  21 U.S.C. § 355(j).

29.   ANDAs filed with the FDA must include the following (a) a statement that the conditions of use prescribed, recommended, or suggested in the labeling proposed for the new drug have been previously approved for a listed drug; (b) a statement that the active pharmaceutical ingredient ("API") in the drug is the same as the listed drug; (c) a statement that the route of administration, the dosage form, and the strength of the generic drug are the same as those of the listed drug; (d) a statement that the generic drug is bioequivalent to the listed drug; and (e) a statement that the labeling proposed for the new drug is the same as the labeling approved for the listed drug. 21 U.S.C. § 355(j)(2) and 21 C.F.R. § 314.94.  In addition, each ANDA must include a certification by the applicant that a patent has not been filed (Paragraph I certification), the underlying patent has expired (Paragraph II certification), the date on which the patent will expire (Paragraph III certification), or a statement that the patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted (Paragraph IV certification).

30.   FDA has promulgated specific requirements for filing ANDAs.  The requirements primarily are set forth at 21 C.F.R. § 314 *et seq.*  The stated purpose of the FDA's requirements is to ensure that drugs which are not safe and effective are not marketed and sold in the United States. 21 C.F.R. § 314.2.

31.   Among other requirements, the generic drug subject to an ANDA must be demonstrated to be bioequivalent to the innovator drug. Bioequivalence means "the absence of a significant difference in the rate and extent to which the active ingredient or

*FILED UNDER SEAL*

active moiety in pharmaceutical equivalents or pharmaceutical alternatives becomes available at the site of drug action when administered at the same molar dose under similar conditions in an appropriately designed study." 21 C.F.R. § 320.1.

32. The generic drug also must be stable. The drug must withstand scrutiny in a written stability program to assess stability characteristics in order to determine the appropriate storage conditions and expiration dates. 21 C.F.R. § 211.166. The FDA's stability testing requires regular, reliable, verifiable testing of the drug in the same container to be used in marketing the product.

33. The generic drug manufacturer, whether located in the United States or abroad, must comply with FDA's current good manufacturing practices ("CGMP") set forth at 21 C.F.R. § 211 *et seq.* in order to market and sell products in the United States. CGMP's extensive requirements regulate the control, management, and documentation of manufacturing and quality testing of the generic drugs. Deviation from CGMP means that the generic drug is adulterated or contaminated within the meaning of section 501(a)(2)(B) of the FDCA. 21 U.S.C. § 351(a)(1)(B).

34. The FDA is authorized to reject an ANDA for any of the following reasons: (a) the application contains an untrue statement of material fact; (b) the methods used in, or the facilities and controls used for, the manufacture, processing, and packing of the drug are inadequate to assure and preserve its identity, strength, quality, and purity; (c) anomalies between the API in the innovator drug and the API in the ANDA, such as impurities or substandard API; (d) the information submitted in the ANDA is insufficient to show that the route of administration, dosage form, or strength is the same as that of the

*FILED UNDER SEAL*

listed drug; and (e) the information submitted in the application is insufficient to show that the drug is bioequivalent to the listed drug referred to in the application. 21 U.S.C. § 335(j)(4).

35.   The FDCA imposes civil and criminal penalties for violations of the statute or the FDA's implementing regulations including, for example, the interstate commerce of adulterated drugs and the adulteration or misbranding of drugs. 21 U.S.C. § 331.

36.   The FDA is authorized to withdraw an ANDA if "approval was obtained, expedited, or otherwise facilitated through bribery, payment of an illegal gratuity, or fraud or [a] material false statement." 21 U.S.C. § 335c(a)(1).

## DEFENDANTS' WRONGFUL ACTS

37.   Relator is a former Director of Research Information & Project Management for Defendant RLL. He was hired on or about November 28, 2002. He began working at the company's Research and Development Center in Gurgaon, Haryana, India, at the end of June 2003 until he resigned his position in or about April 2005.

38.   Relator's job responsibilities gave him access to Defendants' portfolio of drugs sold in the United States and abroad. Relator had responsibility for portfolio and product management. He established a program management office which oversaw internal data created during the formulation and manufacturing of generic drugs. This complex process required Relator to compile information aggregating generic drug formulation, bioequivalence, and stability data, among other information. The purpose of the data management was to coordinate the filing and approval of ANDAs to coincide with two pivotal marketing opportunities: marketing exclusivity granted by the FDA and patent

14

*FILED UNDER SEAL*

invalidity. He prepared detailed status evaluations and revenue projections for each drug in Defendants' portfolio based on four regions of business operations. Relator also was in charge of research and development informatics. This involved cutting-edge information technology initiatives designed and implemented by Relator to perform tasks such as creating systems to file ANDAs electronically; collecting, managing, and reporting on Defendants' clinical data, including bioequivalence information; and creating an automated data archival system.

39. Relator's job responsibilities gave him comprehensive knowledge of, and access to, company data pertaining to global operations, as well as specific data related to individual generic drugs either filed with regulatory authorities or approved in tentative or final form. Relator also had regular contact with Defendants' senior management.

40. In or about August 2004, Relator began a comprehensive, company-wide investigation of Defendants' ARV drug and non-ARV drug portfolio. Relator undertook the investigation with the knowledge, authority, and support of Dr. Rajinder Kumar, then the Head of Research and Development for Defendant RLL. He reported to Dr. Kumar.

41. The purpose of the investigation was to assess whether Defendants and their authorized contract research organizations had falsified data for ARV and non-ARV drugs in order to gain approval for marketing the generic drugs in the United States and abroad.

42. Relator compiled a list of all Defendants' ARV drugs then in development or already approved for marketing. The list included, for example, (a) Lamivudine 150 mg plus Stavudine 30 mg; (b) Lamivudine 150 mg plus Stavudine 40 mg; (c) Lamivudine 150 mg plus Zidovudine 300 mg tablet; (d) Lamivudine 150 mg tablet; (e) Nevirapine 200 mg

*FILED UNDER SEAL*

tablet; (f) Stavudine 30 mg capsule; (g) Zidovudine 300 mg tablet; and (h) Indinavir 400 mg capsule. The ARV drugs were sold in various combinations consistent with prescribed medical drug therapies to treat the HIV virus. Each of the products is a generic version of a patented (or then patented) listed drug.

43. After identifying the ARV drugs manufactured by Defendants, Relator contacted the functional groups responsible for the formulation, testing, and post-registration commercial manufacturing of the generic drugs. As part of his investigation, Relator requested the underlying records (patient records, stability tests, chromatograms, etc.) substantiating the drugs' formulation, bioequivalence, and stability data previous filed with regulatory bodies.[2] He discovered that there was little or no underlying data or, to the extent the data existed at all, it had been fabricated by Defendants.

44. Relator interviewed management of Defendant RLL during the investigation to identify the extent and scope of the data fraud. Interviews were conducted with managers in charge of bioequivalence studies, stability studies, regulatory affairs, quality assurance, and scale-up operations, among other departments. During these meetings, Relator confirmed that Defendants had engaged in a pattern of conduct to knowingly fabricate data which was incorporated into filings with regulators in an effort to deceive regulators into approving Defendants' generic drugs. The falsified data affected the entire portfolio of generic ARV drugs manufactured by Defendants. The falsification of the data was with the

---

[2]     Defendants sell generic drugs in virtually every country in the world. They are required to satisfy country-specific regulatory requirements before marketing their drugs, as well as any multi-national regulations (e.g., European Union) concerning the approval and marketing of the products.

*FILED UNDER SEAL*

knowledge, approval, and at the direction of senior management of Defendants located in India and in the United States.

45.   Defendants subsequently withdrew the generic ARV drugs from marketing globally.  Upon information and belief, Defendants had substantial sales of the ARV drugs prior to withdrawing them from the market.

46.   At or about the same period of Relator's investigation, Defendants, including its subsidiaries based in the United States, filed applications with the FDA to gain approval to sell numerous ARV drugs into the PEPFAR program.  The filings and certifications thereto were made with the knowledge that the data supporting the ARV drug applications was in whole or in part fabricated.

47.   Based on Defendants' representations and certifications in the applications, the FDA granted approval to three ARV drugs.  On May 27, 2005, the Office of Generic Drugs granted tentative approval to ANDA 77-357 held by RLL for Lamivudine Tablets, 150 mg for sale into PEPFAR.[3]  In June 2005, RLL's application for Nevirapine 200 mg tablets was approved, which is a class of drugs called non-nucleoside reverse transcriptase inhibitors used in combination with other antiretroviral agents for the treatment of HIV-1 infection.  On July 13, 2005, FDA tentatively approved RLL's generic Zidovudine 300 mg tablets, and granted final approval of the drug on September 19, 2005, thereby clearing the way for full marketing authorization in the United States.

---

[3]     Tentative approval means that existing patents or exclusivity prevent marketing of the product in the United States, however, the drug is eligible for purchase and use outside the United States under PEPFAR.

*FILED UNDER SEAL*

48. Relator broadened his investigation to include all generic products manufactured and sold by Defendants. During the next several months (August-November 2004), Relator compiled information about fraudulent practices and data in Defendants' entire generic portfolio. He regularly appraised Dr. Kumar of his investigation.

49. Relator identified specific drugs, their registration status in particular countries, and the issue(s) with Defendants' data for the products. The problems he identified affected hundreds of generic drugs sold by Defendants and included the following fraudulent practices (each of which is a separate violation of the FDCA and Federal regulations):

    A. Bioequivalence studies were filed with regulatory authorities based on formulations which were different from the formulation documented to the regulators;

    B. Bioequivalence data was falsified;

    C. Bioequivalence studies for some drugs were conducted on innovator drugs which were ground up, encapsulated, and misrepresented as a formulation developed by Defendants;

    D. Bioequivalence and stability studies were conducted on small research and development batches of product, as opposed to exhibit batches;

    E. Stability studies filed with regulatory authorities were fabricated;

    F. Stability studies filed with regulatory authorities were of a different formulation than proposed;

18

*FILED UNDER SEAL*

G.  Stability studies were performed in one manufacturing location but filed as a different location;

H.  Individual dissolution values in the stability studies were fabricated;

I.  Batch sizes for stability and bioequivalence were intentionally misrepresented in the registration of the products;

J.  Stability shelf-life data was fabricated and submitted as part of the registration;

K.  Substandard API that failed testing and specifications was blended with good API in an effort to have the drug pass specifications;

L.  Research and development and commercial manufacturing of the generic drugs was not in compliance with current good manufacturing practices as required by the FDCA.

50.  Upon information and belief, the formulation problems and falsification of bioequivalence and stability data affected many of the ANDAs filed with the United States between 1998 and 2005 and continued thereafter.  The false data affects the following specific products in addition to the ARV drugs filed with and approved by the FDA:

A.  Cefuroxime Axetil 125 mg, 250 mg, 500 mg (generic of Ceftin®);

B.  Sotret (Isotrenoin) 10 mg, 20 mg, 40 mg (generic of Accutane®);

C.  Simvastatin 5 mg, 10 mg, 20 mg, 40 mg, 80 mg (generic of Zocor®);

D.  Quinapril Hydrochloride tablets 5 mg, 10 mg, 20 mg, and 40 mg (generic of Accupril®);

*FILED UNDER SEAL*

E. Pravastatin Sodium tablets 10 mg, 20 mg, 40 mg, and 80 mg (generic of Pravachol®).

51. Upon information and belief, there were API quality issues and other deficiencies with other generic products manufactured for sale into the United States rendering the products adulterated including the following drugs: Clarithromycin Gel, Esomeprazole, Cephalosporin antibiotic, Amoxicillin Chewable Tablets, Amoxicillin Oral Suspension 200 mg, Amoxicillin Oral Suspension 400 mg batch, Cefpodoxime Proxctil, Terbinafine, Siirolimus, Cefditoren, Pivoxil Tablets 200 mg, Calcitriol Softgels, Triviro LS 30/40 Tablets, Coviro LS 30/40 Tablets.

52. Relator notified Dr. Kumar of his findings, who reported to senior management. In November 2004, during a closed-door board of directors meeting in Thailand, Dr. Kumar addressed the board about the data falsification. In advance of the meeting, Relator prepared a spreadsheet identifying the specific affected drugs and the issue(s) with Defendants' data for each drug. Upon information and belief, Dr. Kumar notified the board members of Relator's investigation and the systemic fraud in formulation, bioequivalence, and stability filings with regulators in the United States and other countries to obtain approval for the ARVs and non-ARV drugs in Defendants' portfolio.

53. In December 2004, Dr. Kumar addressed a subset of the board held out as a scientific committee. In advance of the meeting, Relator prepared documentation for use by Dr. Kumar to brief the meeting participants on Relator's findings. The documentation addressed the risk to Defendants ANDA portfolio, the affected drugs, the fraud discovered by Relator, and a patient-oriented mitigation plan.

*FILED UNDER SEAL*

54.   Upon information and belief, Defendants knowingly concealed from authorities the FDCA and other law violations and requested that Dr. Kumar destroy the evidence of the fraud.  Dr. Kumar responded by resigning.

55.   Defendants failed to disclose the violations of the FDCA and other laws as set forth herein to the FDA or Federal or State authorities.  As a result, claims related to the ARV drugs and non-ARV drugs manufactured by Defendants were paid under the Medicare and Medicaid programs, as well as other Federally-appropriated relief programs such as PEPFAR.

56.   At all times relevant to these false claims and certifications, Defendants knew that the generic drugs were not bioequivalent, stable, nor efficacious to therapeutically treat the infectious diseases and other medical conditions claimed in labeling and marketing of the products and, thereby, directly endangered the health and welfare of patients.

### DAMAGES

57.   The United States and the States have been damaged by the acts and practices of Defendants, as described above, in presenting, causing to be presented, and conspiring to present false claims, statements and records to induce the payment for generic drugs which Defendants were not entitled to payment.

58.   Defendants profited unlawfully from the payment of the false and fraudulent claims.

59.   As a result of the acts and practices described here, Defendants subjected patients to increased risks of morbidity and mortality as a consequence of the conduct stated herein.

*FILED UNDER SEAL*

## COUNT ONE

## VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(1)

60.  Relator restates and realleges the allegations contained in paragraphs 1-59 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

61.  The FCA, 31 U.S.C. § 3729(a)(1), provides in relevant part that any person who:

> (a)(1) knowingly presents, or causes to be presented to an officer or employee of the United States Government, or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval. . .

> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person. . . .

62.  By virtue of the acts described herein, Defendants knowingly presented, or caused to be presented, to officers, employees or agents of the United States and the States under Medicare, Medicaid, and the Federally-appropriated relief programs such as PEPFAR, false or fraudulent claims for payment or approval of generic ARV and non-ARV drugs.  Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

63.  Unaware of Defendants' fraud and in reliance on the accuracy of Defendants' representations, the United States and the States have paid said claims and have suffered financial losses because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT TWO

## VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(2)

64.   Relator restates and realleges the allegations contained in paragraphs 1-63 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

65.   The FCA, 31 U.S.C. § 3729(a)(2), provides in relevant part that any person who:

> (a)(2) knowingly makes, uses or causes to be made or used, a false record of statement to get a false or fraudulent claim paid or approved by the government. . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person. . . .

66.   By virtue of the acts described herein, Defendants knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States and the States.  Defendants knew that submissions to the United States and the States for payment under Medicare, Medicaid, and the Federally-appropriated relief programs such as PEPFAR contained false records, statements, or certifications.

67.   Unaware of Defendants' fraud and in reliance on the accuracy of Defendants' representations, the United States and the States have paid said claims and have suffered financial losses because of these acts by Defendants.

23

*FILED UNDER SEAL*

## COUNT THREE

## VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(3)

68.   Relator restates and realleges the allegations contained in paragraphs 1-67 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

69.   The FCA, 31 U.S.C. § 3729(a)(3), provides in relevant part that any person who:

> (a)(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid. . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person. . . .

70.   Defendants combined and conspired to obtain payments from the United States and the States under Medicare, Medicaid, and the Federally-appropriated relief programs such as PEPFAR in violation of 31 U.S.C. § 3729(a)(3).

71.   As a result of the conspiracy, the United States and the States have suffered substantial damages.

## COUNT FOUR

## VIOLATIONS OF THE ARKANSAS MEDICAID FCA
### Arkansas Code Ann. § 20-77-902(1)

72.   Relator restates and realleges the allegations contained in paragraphs 1-71 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

*FILED UNDER SEAL*

73.   The Arkansas Medicaid Fraud False Claims Act, § 20-77-902(1), provides that a person shall be liable to the State of Arkansas, through the Attorney General, for a civil penalty and restitution if he or she knowingly makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under the Arkansas Medicaid program.  Any person violating § 20-77-902(1) is subject to liability in the amount of full restitution and for a civil penalty of not less than $5,000 and not more than $10,000 for each violation, plus three (3) times the amount of all payments judicially found to have been fraudulently received from the Arkansas Medicaid program or its fiscal agents because of the act of that person.

74.   Upon information and belief, Defendants knowingly made or caused to be made false statements and representations of material facts with respect to payments under the Arkansas Medicaid Program for Defendants' generic drugs in violation of § 20-77-902(1).

75.   Upon information and belief, the State of Arkansas has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Arkansas because of these acts by Defendants.

## COUNT FIVE

### VIOLATIONS OF THE ARKANSAS MEDICAID FCA
### Arkansas Code Ann. § 20-77-902(2)

76.   Relator restates and realleges the allegations contained in paragraphs 1-75 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

25                                    *FILED UNDER SEAL*

77.   The Arkansas Medicaid Fraud False Claims Act, § 20-77-902(2), provides that a person shall be liable to the State of Arkansas, through the Attorney General, for a civil penalty and restitution if, at any time, he or she knowingly makes or causes to be made any false statement or representation of a material fact for use in determining rights to a benefit or payment.  Any person violating § 20-77-902(2) is subject to liability in the amount of full restitution and for a civil penalty of not less than $5,000 and not more than $10,000 for each violation, plus three (3) times the amount of all payments judicially found to have been fraudulently received from the Arkansas Medicaid program or its fiscal agents because of the act of that person.

78.   Upon information and belief, Defendants knowingly made or caused to be made false statements and representations of material facts with respect to payments under the Arkansas Medicaid Program for Defendants' generic drugs in violation of § 20-77-902(2).

79.   Upon information and belief, the State of Arkansas has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Arkansas because of these acts by Defendants.

## COUNT SIX

### VIOLATIONS OF THE ARKANSAS MEDICAID FCA
### Arkansas Code Ann. § 20-77-902(3)

80.   Relator restates and realleges the allegations contained in paragraphs 1-79 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

26

*FILED UNDER SEAL*

81.   The Arkansas Medicaid Fraud False Claims Act, § 20-77-902(3), provides that a person shall be liable to the State of Arkansas, through the Attorney General, for a civil penalty and restitution if, "having knowledge of the occurrence of any event affecting his or her initial or continued right to any benefit or payment or the initial or continued right to any benefit or payment of any other individual in whose behalf he or she has applied for or is receiving a benefit or payment [he or she] knowingly conceals or fails to disclose that event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized." Any person violating § 20-77-902(3) is subject to liability in the amount of full restitution and for a civil penalty of not less than $5,000 and not more than $10,000 for each violation, plus three (3) times the amount of all payments judicially found to have been fraudulently received from the Arkansas Medicaid program or its fiscal agents because of the act of that person.

82.   Upon information and belief, Defendants knowingly concealed or failed to disclose the information set forth herein with an intent to fraudulent secure payments under the Arkansas Medicaid Program for Defendants' generic drugs in violation of § 20-77-902(3).

83.   Upon information and belief, the State of Arkansas has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Arkansas because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT SEVEN

### VIOLATIONS OF THE CALIFORNIA FCA
### Cal. Gov't Code § 12651(a)(1)

84.   Relator restates and realleges the allegations contained in paragraphs 1-83 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

85.   The California FCA, Cal. Gov't Code § 12651(a)(1), provides that any person who knowingly presents or causes to be presented to an officer or employee of the state a false claim for payment or approval shall be liable for three times the amount of damages sustained, the costs of a civil action brought to recover any of the penalties or damages, and a civil penalty of up to $10,000 for each false claim.

86.   Upon information and belief, Defendants knowingly presented or caused to be presented to an officer or employee of California a claim for payment for Defendants' generic drugs in violation of Cal. Gov't Code § 12651(a)(1).

87.   Upon information and belief, the State of California has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in California because of these acts by Defendants.

### COUNT EIGHT

### VIOLATIONS OF THE CALIFORNIA FCA
### Cal. Gov't Code § 12651(a)(2)

88.   Relator restates and realleges the allegations contained in paragraphs 1-87 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

*FILED UNDER SEAL*

89.   The California FCA, Cal. Gov't Code § 12651(a)(1), provides that any person who knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by California shall be liable for three times the amount of damages sustained, the costs of a civil action brought to recover any of the penalties or damages, and a civil penalty of up to $10,000 for each false claim.

90.   Upon information and belief, Defendants knowingly made, used, or caused to be made or used a false record or statement to get a false claim paid or approved by an officer or employee of California regarding payment for Defendants' generic drugs in violation of Cal. Gov't Code § 12651(a)(2).

91.   Upon information and belief, the State of California has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in California because of these acts by Defendants.

## COUNT NINE

### VIOLATIONS OF THE CALIFORNIA FCA
### Cal. Gov't Code § 12651(a)(3)

92.   Relator restates and realleges the allegations contained in paragraphs 1-90 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

93.   The California FCA, Cal. Gov't Code § 12651(a)(3), provides that any person who conspires to defraud California by getting a false claim allowed or paid by California shall be liable for three times the amount of damages sustained, the costs of a civil action brought to recover any of the penalties or damages, and a civil penalty of up to $10,000 for each false claim.

*FILED UNDER SEAL*

94.   Upon information and belief, Defendants conspired to defraud California by getting a false claim allowed or paid by an officer or employee of California regarding payment for Defendants' generic drugs in violation of Cal. Gov't Code § 12651(a)(3).

95.   Upon information and belief, the State of California has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in California because of these acts by Defendants.

## COUNT TEN

## VIOLATIONS OF THE DELAWARE FCA
### Del. Code Ann. tit. 6, § 1201(a)(1)

96.   Relator restates and realleges the allegations contained in paragraphs 1-95 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

97.   The Delaware FCA, Del. Code Ann. tit. 6, § 1201(a)(1)), provides that any person who knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval shall be liable for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation, plus 3 times the amount of actual damages which the Government sustains because of the act of that person.

98.   Upon information and belief, Defendants knowingly presented, or caused to be presented, directly or indirectly, to an officer of employee of Delaware a false or fraudulent claim for payment or approval of Defendants' generic drugs in violation of Del. Code Ann. tit. 6, § 1201(a)(1).

*FILED UNDER SEAL*

99. Upon information and belief, the State of Delaware has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Delaware because of these acts by Defendants.

## COUNT ELEVEN

## VIOLATIONS OF THE DELAWARE FCA
### Del. Code Ann. tit. 6, § 1201(a)(2)

100. Relator restates and realleges the allegations contained in paragraphs 1-99 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

101. The Delaware FCA, Del. Code Ann. tit. 6, § 1201(a)(2)), provides that any person who knowingly makes, uses or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved shall be liable for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation, plus 3 times the amount of actual damages which the Government sustains because of the act of that person.

102. Upon information and belief, Defendants knowingly made, used, or caused to be made or used, directly or indirect, to an officer of employee of Delaware a false record or statement to get a false or fraudulent claim for payment paid or approved regarding Defendants' generic drugs in violation of Del. Code Ann. tit. 6, § 1201(a)(2).

103. Upon information and belief, the State of Delaware has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Delaware because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT TWELVE

### VIOLATIONS OF THE DELAWARE FCA
### Del. Code Ann. tit. 6, § 1201(a)(3)

104. Relator restates and realleges the allegations contained in paragraphs 1-103 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

105. The Delaware FCA, Del. Code Ann. tit. 6, § 1201(a)(3), provides that any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid shall be liable for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation, plus 3 times the amount of actual damages which the Government sustains because of the act of that person.

106. Upon information and belief, Defendants conspired to defraud Delaware by getting a false or fraudulent claim allowed or paid regarding Defendants' generic drugs in violation of Del. Code Ann. tit. 6, § 1201(a)(3).

107. Upon information and belief, the State of Delaware has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Delaware because of these acts by Defendants.

## COUNT THIRTEEN

### VIOLATIONS OF THE DISTRICT OF COLUMBIA PROCUREMENT
### REFORM AMENDMENT ACT
### D.C. Code § 2-308.14(a)(1)

108. Relator restates and realleges the allegations contained in paragraphs 1-107 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

*FILED UNDER SEAL*

109. The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(1), provides that any person who knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval shall be liable for three times the amount of damages which the District sustains, the costs of a civil action brought to recover penalties or damages, and may be liable for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim.

110. Upon information and belief, Defendants knowingly presented, or caused to be presented to an officer or employee of the District a false claim for payment or approval regarding Defendants' generic drugs in violation of D.C. Code § 2-308.14(a)(1).

111. Upon information and belief, the District has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in the District because of these acts by Defendants.

**COUNT FOURTEEN**

**VIOLATIONS OF THE DISTRICT OF COLUMBIA PROCUREMENT
REFORM AMENDMENT ACT
D.C. Code § 2-308.14(a)(2)**

112. Relator restates and realleges the allegations contained in paragraphs 1-112 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

113. The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(2), provides that any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the District shall be liable for three times the amount of damages which the District sustains, the costs

33

*FILED UNDER SEAL*

of a civil action brought to recover penalties or damages, and may be liable for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim.

114. Upon information and belief, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false claim paid by the District regarding Defendants' generic drugs in violation of D.C. Code § 2-308.14(a)(2).

115. Upon information and belief, the District has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in the District because of these acts by Defendants.

## COUNT FIFTEEN

### VIOLATIONS OF THE DISTRICT OF COLUMBIA PROCUREMENT REFORM AMENDMENT ACT
### D.C. Code § 2-308.14(a)(3)

116. Relator restates and realleges the allegations contained in paragraphs 1-115 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

117. The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(3), provides that any person who conspires to defraud the District by getting a false claim allowed or paid by the District shall be liable for three times the amount of damages which the District sustains, the costs of a civil action brought to recover penalties or damages, and may be liable for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim.

*FILED UNDER SEAL*

118. Upon information and belief, Defendants conspired to defraud the District by getting a false claim allowed or paid regarding Defendants' generic drugs in violation of D.C. Code § 2-308.14(a)(3).

119. Upon information and belief, the District has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in the District because of these acts by Defendants.

## COUNT SIXTEEN

### VIOLATIONS OF THE FLORIDA FCA
### Fla. Stat. § 68.082(2)(a)

120. Relator restates and realleges the allegations contained in paragraphs 1-119 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

121. The Florida FCA, Fla. Stat. § 68.082(2)(a), provides that any person who knowingly presents or causes to be presented to an officer or employee of an agency a false claim for payment or approval is liable to Florida for a civil penalty of not less than $5,000 and not more than $10,000, and for treble the amount of damages the agency sustains because of the act or omission of that person.

122. Upon information and belief, Defendants conspired to defraud Florida by presenting, or causing to be presented, to an officer of employee of a Florida agency a false claim for payment or approval regarding Defendants' generic drugs in violation of  Fla. Stat. § 68.082(2)(a).

*FILED UNDER SEAL*

123. Upon information and belief, the State of Florida has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Florida because of these acts by Defendants.

## COUNT SEVENTEEN

### VIOLATIONS OF THE FLORIDA FCA
### Fla. Stat. § 68.082(2)(b)

124. Relator restates and realleges the allegations contained in paragraphs 1-123 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

125. The Florida FCA, Fla. Stat. § 68.082(2)(b), provides that any person who knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency is liable to Florida for a civil penalty of not less than $5,000 and not more than $10,000, and for treble the amount of damages the agency sustains because of the act or omission of that person.

126. Upon information and belief, Defendants knowingly made, used, or caused to be made or used a false record or statement to get a false claim paid or approved by an agency of Florida regarding Defendants' generic drugs in violation of Fla. Stat. § 68.082(2)(b).

127. Upon information and belief, the State of Florida has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Florida because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT EIGHTEEN

### VIOLATIONS OF THE FLORIDA FCA
### Fla. Stat. § 68.082(2)(c)

128. Relator restates and realleges the allegations contained in paragraphs 1-127 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

129. The Florida FCA, Fla. Stat. § 68.082(2)(c), provides that any person who conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid is liable to Florida for a civil penalty of not less than $5,000 and not more than $10,000, and for treble the amount of damages the agency sustains because of the act or omission of that person.

130. Upon information and belief, Defendants conspired to submit a false claim to a Florida agency or deceived the agency for the purpose of getting a false or fraudulent claim allowed or paid regarding Defendants' generic drugs in violation of  Fla. Stat. § 68.082(2)(a).

131. Upon information and belief, the State of Florida has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Florida because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT NINETEEN

### VIOLATIONS OF THE HAWAII FCA
### Haw. Rev. Stat. § 661-21(a)(1)

132. Relator restates and realleges the allegations contained in paragraphs 1-131 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

133. The Hawaii FCA, Haw. Rev. Stat. § 661-21(a)(1), provides that any person who knowingly presents, or causes to be presented, to an officer or employee of Hawaii a false or fraudulent claim for payment or approval shall be liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages the agency sustains due to the act or omission of that person.

134. Upon information and belief, Defendants knowingly presented, or caused to be presented, to an officer or employee of Hawaii a false or fraudulent claim for payment or approval regarding Defendants' generic drugs in violation of Haw. Rev. Stat. § 661-21(a)(1).

135. Upon information and belief, the State of Hawaii has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Hawaii because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT TWENTY

### VIOLATIONS OF THE HAWAII FCA
### Haw. Rev. Stat. § 661-21(a)(2)

136. Relator restates and realleges the allegations contained in paragraphs 1-135 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

137. The Hawaii FCA, Haw. Rev. Stat. § 661-21(a)(2), provides that any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State shall be liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages the agency sustains due to the act or omission of that person.

138. Upon information and belief, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by Hawaii regarding Defendants' generic drugs in violation of Haw. Rev. Stat. § 661-21(a)(2).

139. Upon information and belief, the State of Hawaii has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Hawaii because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT TWENTY-ONE

### VIOLATIONS OF THE HAWAII FCA
### Haw. Rev. Stat. § 661-21(a)(3)

140. Relator restates and realleges the allegations contained in paragraphs 1-139 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

141. The Hawaii FCA, Haw. Rev. Stat. § 661-21(a)(3), provides that any person who conspires to defraud the State by getting a false or fraudulent claim allowed or paid shall be liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages the agency sustains due to the act or omission of that person.

142. Upon information and belief, Defendants conspired to defraud Hawaii by getting a false or fraudulent claim allowed or paid regarding Defendants' generic drugs in violation of Haw. Rev. Stat. § 661-21(a)(3).

143. Upon information and belief, the State of Hawaii has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Hawaii because of these acts by Defendants.

## COUNT TWENTY-TWO

### VIOLATIONS OF THE ILLINOIS WHISTLEBLOWER REWARD
### AND PROTECTION ACT
### 740 Ill. Comp. Stat. § 175/3(a)(1)

144. Relator restates and realleges the allegations contained in paragraphs 1-143 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

*FILED UNDER SEAL*

145. The Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/3(a)(1), provides that whoever knowingly presents, or causes to be presented, to an officer or employee of the State or member of the Guard a false or fraudulent claim for payment or approval is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the State sustains due to the act of that person.

146. Upon information and belief, Defendants knowingly presented, or caused to be presented, to an officer or employee of Illinois a false or fraudulent claim for payment or approval regarding Defendants' generic drugs in violation of 740 Ill. Comp. Stat. § 175/3(a)(1).

147. Upon information and belief, the State of Illinois has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Illinois because of these acts by Defendants.

## COUNT TWENTY-THREE

### VIOLATIONS OF THE ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT
### 740 Ill. Comp. Stat. § 175/3(a)(2)

148. Relator restates and realleges the allegations contained in paragraphs 1-147 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

149. The Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/3(a)(2), provides that whoever knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State is

*FILED UNDER SEAL*

liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the State sustains due to the act of that person.

150. Upon information and belief, Defendants knowingly made, used or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved regarding Defendants' generic drugs in violation of 740 Ill. Comp. Stat. § 175/3(a)(2).

151. Upon information and belief, the State of Illinois has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Illinois because of these acts by Defendants.

### COUNT TWENTY-FOUR

### VIOLATIONS OF THE ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT
### 740 Ill. Comp. Stat. § 175/3(a)(3)

152. Relator restates and realleges the allegations contained in paragraphs 1-151 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

153. The Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/3(a)(2), provides that whoever conspires to defraud the State by getting a false or fraudulent claim allowed or paid is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the State sustains due to the act of that person.

*FILED UNDER SEAL*

154. Upon information and belief, Defendants conspired to defraud Illinois by getting a false or fraudulent claim allowed or paid regarding Defendants' generic drugs in violation of 740 Ill. Comp. Stat. § 175/3(a)(3).

155. Upon information and belief, the State of Illinois has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Illinois because of these acts by Defendants.

### COUNT TWENTY-FIVE

### VIOLATIONS OF THE LOUISANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW
### La. Rev. Stat. Ann. § 46:438.3(A)

156. Relator restates and realleges the allegations contained in paragraphs 1-155 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

157. The Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. §§ 46-438.3(A) & 46-438.6, provides that a person who knowingly presents or causes to be presented a false or fraudulent claim is liable to the State for actual damages, treble damages, and a civil monetary penalty not to exceed $10,000 for each false or fraudulent claim or prohibited act.

158. Upon information and belief, Defendants knowingly presented or caused to be presented a false or fraudulent claim to Louisiana regarding Defendants' generic drugs in violation of La. Rev. Stat. Ann. §§ 46-438.3(A) & 46-438.6.

43

*FILED UNDER SEAL*

159. Upon information and belief, the State of Louisiana has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Louisiana because of these acts by Defendants.

## COUNT TWENTY-SIX

### VIOLATIONS OF THE LOUISANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW
### La. Rev. Stat. Ann. § 46:438.3(B)

160. Relator restates and realleges the allegations contained in paragraphs 1-159 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

161. The Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. §§ 46-438.3(B) & 46-438.6, provides that a person who knowingly engages in a misrepresentation to obtain, or attempt to obtain, payment from medical assistance programs funds is liable to the State for actual damages, treble damages, and a civil monetary penalty not to exceed $10,000 for each false or fraudulent claim or prohibited act.

162. Upon information and belief, Defendants knowingly engaged in a misrepresentation to obtain, or attempt to obtain, payment from medical assistance program funds in Louisiana regarding Defendants' generic drugs in violation of La. Rev. Stat. Ann. §§ 46-438.3(B) & 46-438.6.

163. Upon information and belief, the State of Louisiana has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Louisiana because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT TWENTY-SEVEN

## VIOLATIONS OF THE LOUISANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW
### La. Rev. Stat. Ann. § 46:438.3(C)

164. Relator restates and realleges the allegations contained in paragraphs 1-163 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

165. The Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. §§ 46-438.3(C) & 46-438.6, provides that a person who conspires to defraud, or attempts to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim is liable to the State for actual damages, treble damages, and a civil monetary penalty not to exceed $10,000 for each false or fraudulent claim or prohibited act.

166. Upon information and belief, Defendants conspired to fraud, or attempted to defraud, the medical assistance programs through misrepresentation or by obtaining payment for a false or fraudulent claim from medical assistance program funds in Louisiana regarding Defendants' generic drugs in violation of La. Rev. Stat. Ann. §§ 46-438.3(C) & 46-438.6.

167. Upon information and belief, the State of Louisiana has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Louisiana because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT TWENTY-SEVEN

## VIOLATIONS OF THE MASSACHUSETTS FCA
### Mass. Gen. Laws Ch. 12, § 5B(1)

168. Relator restates and realleges the allegations contained in paragraphs 1-167 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

169. The Massachusetts FCA, Mass. Gen. Laws Ch. 12, § 5B(1), provides that a person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval shall be liable to the commonwealth or political subdivision for a civil penalty of not less than $5,000 and not more than $10,000 per violation, plus three times the amount of damages, including consequential damages, the commonwealth or political subdivision sustains because of the act of that person.

170. Upon information and belief, Defendants knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval to the commonwealth or political subdivision regarding Defendants' generic drugs in violation of Mass. Gen. Laws Ch. 12, § 5B(1).

171. Upon information and belief, the State of Massachusetts has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Massachusetts because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT TWENTY-EIGHT

## VIOLATIONS OF THE MASSACHUSETTS FCA
### Mass. Gen. Laws Ch. 12, § 5B(2)

172. Relator restates and realleges the allegations contained in paragraphs 1-171 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

173. The Massachusetts FCA, Mass. Gen. Laws Ch. 12, § 5B(2), provides that a person who knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof shall be liable to the commonwealth or political subdivision for a civil penalty of not less than $5,000 and not more than $10,000 per violation, plus three times the amount of damages, including consequential damages, the commonwealth or political subdivision sustains because of the act of that person.

174. Upon information and belief, Defendants knowingly made, used, or caused to be made or used, a false record or statement payment or approval of a claim by the commonwealth or political subdivision regarding Defendants' generic drugs in violation of Mass. Gen. Laws Ch. 12, § 5B(2).

175. Upon information and belief, the State of Massachusetts has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Massachusetts because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT THIRTY

### VIOLATIONS OF THE NEW HAMPSHIRE FCA
### N.H. Rev. Stat. Ann. § 167:61-b(I)(a)

176. Relator restates and realleges the allegations contained in paragraphs 1-175 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

177. The New Hampshire FCA, N.H. Rev. Stat. Ann. § 167:61-b(I)(a), provides that a person knowingly presents, or causes to be presented, to an officer or employee of the department, a false or fraudulent claim for payment or approval shall be liable for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained because of the act of that person.

178. Upon information and belief, Defendants knowingly presented, or caused to be presented, to an officer or employee of the department, a false or fraudulent claim for payment or approval regarding Defendants' generic drugs in violation of N.H. Rev. Stat. Ann. § 167:61-b(I)(a).

179. Upon information and belief, the State of New Hampshire has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Massachusetts because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT THIRTY-ONE

## VIOLATIONS OF THE NEW HAMPSHIRE FCA
### N.H. Rev. Stat. Ann. § 167:61-b(I)(b)

180. Relator restates and realleges the allegations contained in paragraphs 1-179 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

181. The New Hampshire FCA, N.H. Rev. Stat. Ann. § 167:61-b(I)(b), provides that a person knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the department shall be liable for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained because of the act of that person.

182. Upon information and belief, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the department regarding Defendants' generic drugs in violation of N.H. Rev. Stat. Ann. § 167:61-b(I)(b).

183. Upon information and belief, the State of New Hampshire has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Massachusetts because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT THIRTY-TWO

### VIOLATIONS OF THE NEW HAMPSHIRE FCA
### N.H. Rev. Stat. Ann. § 167:61-b(I)(c)

184. Relator restates and realleges the allegations contained in paragraphs 1-183 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

185. The New Hampshire FCA, N.H. Rev. Stat. Ann. § 167:61-b(I)(c), provides that a person who conspires to defraud the department by getting a false or fraudulent claim allowed or paid shall be liable for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained because of the act of that person.

186. Upon information and belief, Defendants conspired to defraud the department by getting a false or fraudulent claim allowed or paid regarding Defendants' generic drugs in violation of N.H. Rev. Stat. Ann. § 167:61-b(I)(c).

187. Upon information and belief, the State of New Hampshire has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Massachusetts because of these acts by Defendants.

## COUNT THIRTY-THREE

### VIOLATIONS OF THE NEW MEXICO MEDICAID
### FALSE CLAIMS ACT
### N.M. Stat. Ann. § 27-14-4(A)

188. Relator restates and realleges the allegations contained in paragraphs 1-187 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

*FILED UNDER SEAL*

189. The New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-4(A), provides that a person who presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that such claim is false or fraudulent shall be liable for three times the amount of damages sustained because of the act of that person.

190. Upon information and belief, Defendants presented, or caused to be presented, to New Mexico a claim for payment under the Medicaid program knowing that such claim was false or fraudulent regarding Defendants' generic drugs in violation of N.M. Stat. Ann. § 27-14-4(A).

191. Upon information and belief, the State of New Mexico has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in New Mexico because of these acts by Defendants.

## COUNT THIRTY-FOUR

### VIOLATIONS OF THE NEW MEXICO MEDICAID
### FALSE CLAIMS ACT
### N.M. Stat. Ann. § 27-14-4(C)

192. Relator restates and realleges the allegations contained in paragraphs 1-191 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

193. The New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-4(C), provides that a person who makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false shall be liable for three times the amount of damages sustained because of the act of that person.

*FILED UNDER SEAL*

194. Upon information and belief, Defendants made, used or caused to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement was false regarding Defendants' generic drugs in violation of N.M. Stat. Ann. § 27-14-4(C).

195. Upon information and belief, the State of New Mexico has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in New Mexico because of these acts by Defendants.

## COUNT THIRTY-FIVE

### VIOLATIONS OF THE NEW MEXICO MEDICAID FALSE CLAIMS ACT
### N.M. Stat. Ann. § 27-14-4(D)

196. Relator restates and realleges the allegations contained in paragraphs 1-195 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

197. The New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-4(D), provides that a person who conspires to defraud New Mexico by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent shall be liable for three times the amount of damages sustained because of the act of that person.

198. Upon information and belief, Defendants conspired to defraud New Mexico by getting a claim allowed or paid under the Medicaid program knowing that such claim was false or fraudulent regarding Defendants' generic drugs in violation of N.M. Stat. Ann. § 27-14-4(D).

*FILED UNDER SEAL*

199. Upon information and belief, the State of New Mexico has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in New Mexico because of these acts by Defendants.

## COUNT THIRTY-SIX

### VIOLATIONS OF THE NEVADA FCA
### Nev. Rev. Stat. § 357.040(1)(a)

200. Relator restates and realleges the allegations contained in paragraphs 1-199 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

201. The Nevada FCA, Nev. Rev. Stat. § 357.040(1)(a), provides that a person who knowingly presents or causes to be presented a false claim for payment or approval, with or without specific intent to defraud, is liable for three times the amount of damages sustained by the state or political subdivision because of the act of that person, for the costs of a civil action brought to recover those damages, and for a civil penalty of not less than $2,000 or more than $10,000 for each act.

202. Upon information and belief, Defendants knowingly presented or caused to be presented a false claim for payment or approval in Nevada regarding Defendants' generic drugs in violation of Nev. Rev. Stat. § 357.040(1)(a).

203. Upon information and belief, the State of Nevada has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Nevada because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT THIRTY-SEVEN

## VIOLATIONS OF THE NEVADA FCA
### Nev. Rev. Stat. § 357.040(1)(b)

204. Relator restates and realleges the allegations contained in paragraphs 1-203 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

205. The Nevada FCA, Nev. Rev. Stat. § 357.040(1)(b), provides that a person who knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim is liable for three times the amount of damages sustained by the state or political subdivision because of the act of that person, for the costs of a civil action brought to recover those damages, and for a civil penalty of not less than $2,000 or more than $10,000 for each act.

206. Upon information and belief, Defendants knowingly knowingly made or used, or caused to be made or used, a false record or statement to obtain payment or approval of a false claim regarding Defendants' generic drugs in violation of Nev. Rev. Stat. § 357.040(1)(b).

207. Upon information and belief, the State of Nevada has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Nevada because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT THIRTY-EIGHT

### VIOLATIONS OF THE NEVADA FCA
### Nev. Rev. Stat. § 357.040(1)(c)

208. Relator restates and realleges the allegations contained in paragraphs 1-207 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

209. The Nevada FCA, Nev. Rev. Stat. § 357.040(1)(c), provides that a person who conspires to defraud by obtaining allowance or payment of a false claim is liable for three times the amount of damages sustained by the state or political subdivision because of the act of that person, for the costs of a civil action brought to recover those damages, and for a civil penalty of not less than $2,000 or more than $10,000 for each act.

210. Upon information and belief, Defendants conspired to defraud Nevada by obtaining allowance or payment of a false claim regarding Defendants' generic drugs in violation of Nev. Rev. Stat. § 357.040(1)(c).

211. Upon information and belief, the State of Nevada has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Nevada because of these acts by Defendants.

## COUNT THIRTY-NINE

### VIOLATIONS OF THE TENNESSEE MEDICAID FCA
### Tenn. Code Ann. § 71-182(a)(1)(A)

212. Relator restates and realleges the allegations contained in paragraphs 1-211 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

*FILED UNDER SEAL*

213. The Tennessee FCA, Tenn. Code Ann. § 71-182(a)(1)(A), provides that a person who presents, or causes to be presented, to the State a claim for payment under Medicaid program knowing such claim is false or fraudulent is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the state sustains because of the act of that person.

214. Upon information and belief, Defendants presented, or caused to be presented, to the State a claim for payment under Medicaid program knowing such claim was false or fraudulent regarding Defendants' generic drugs in violation of Tenn. Code Ann. § 71-182(a)(1)(A).

215. Upon information and belief, the State of Tennessee has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Tennessee because of these acts by Defendants.

## COUNT FORTY

### VIOLATIONS OF THE TENNESSEE MEDICAID FCA
### Tenn. Code Ann. § 71-182(a)(1)(B)

216. Relator restates and realleges the allegations contained in paragraphs 1-214 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

217. The Tennessee FCA, Tenn. Code Ann. § 71-182(a)(1)(B), provides that a person who makes, uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the State knowing such record or statement is false, is liable to the State for a civil penalty of not less than

*FILED UNDER SEAL*

$5,000 and not more than $10,000, plus three times the amount of damages which the state sustains because of the act of that person.

218. Upon information and belief, Defendants made, used, or caused to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the State knowing such record or statement was false regarding Defendants' generic drugs in violation of Tenn. Code Ann. § 71-182(a)(1)(B).

219. Upon information and belief, the State of Tennessee has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Tennessee because of these acts by Defendants.

### COUNT FORTY-ONE

### VIOLATIONS OF THE TENNESSEE MEDICAID FCA
### Tenn. Code Ann. § 71-182(a)(1)(C)

220. Relator restates and realleges the allegations contained in paragraphs 1-219 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

221. The Tennessee FCA, Tenn. Code Ann. § 71-182(a)(1)(C), provides that a person who conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the state sustains because of the act of that person.

222. Upon information and belief, Defendants conspired to defraud the State by getting a claim allowed or paid under the Medicaid program knowing such claim was false

*FILED UNDER SEAL*

or fraudulent regarding Defendants' generic drugs in violation of Tenn. Code Ann. § 71-182(a)(1)(C).

223. Upon information and belief, the State of Tennessee has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Tennessee because of these acts by Defendants.

### COUNT FORTY-TWO

### VIOLATIONS OF THE TEXAS MEDICAID FRAUD PREVENTION LAW
### Tex. Hum. Res. Code § 36.002(1)(A)

224. Relator restates and realleges the allegations contained in paragraphs 1-223 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

225. The Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code §§ 36.002(1)(A) & 36.052, provides that a person who knowingly or intentionally makes or causes to be made a false statement or misrepresentation of material fact on an application for a contract, benefit, or payment under the Medicaid program may be liable for restitution, interest, a civil penalty of not less than $1000 and not more than $15,000 for each unlawful act resulting in an injury, and twice the amount of damages.

226. Upon information and belief, Defendants knowingly or intentionally made or caused to be made a false statement or misrepresentation of material fact on regarding payment under the Medicaid program for Defendants' generic drugs in violation of Tex. Hum. Res. Code §§ 36.002(1)(A) & 36.052.

*FILED UNDER SEAL*

227. Upon information and belief, the State of Texas has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Texas because of these acts by Defendants.

## COUNT FORTY-THREE

### VIOLATIONS OF THE TEXAS MEDICAID FRAUD PREVENTION LAW
### Tex. Hum. Res. Code § 36.002(1)(B)

228. Relator restates and realleges the allegations contained in paragraphs 1-227 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

229. The Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code §§ 36.002(1)(B) & 36.052, provides that a person who knowingly or intentionally makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program may be liable for restitution, interest, a civil penalty of not less than $1000 and not more than $15,000 for each unlawful act resulting in an injury, and twice the amount of damages.

230. Upon information and belief, Defendants knowingly or intentionally made, caused to be made, induced, or sought to induce the making of a false statement or misrepresentation of material fact concerning information required to be provided by a Federal or State law, rule, regulation, or provider agreement pertaining to the Medicaid

*FILED UNDER SEAL*

program regarding Defendants' generic drugs in violation of Tex. Hum. Res. Code §§ 36.002(1)(B) & 36.052.

231. Upon information and belief, the State of Texas has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Texas because of these acts by Defendants.

## COUNT FORTY-FOUR

### VIOLATIONS OF THE TEXAS MEDICAID FRAUD PREVENTION LAW
### Tex. Hum. Res. Code § 36.002(7)(C)

232. Relator restates and realleges the allegations contained in paragraphs 1-231 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

233. The Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code §§ 36.002(7)(C) & 36.052, provides that a person who knowingly or intentionally makes a claim under the Medicaid program for a product that has been adulterated, debased, mislabeled, or that is otherwise inappropriate may be liable for restitution, interest, a civil penalty of not less than $1000 and not more than $15,000 for each unlawful act resulting in an injury, and twice the amount of damages.

234. Upon information and belief, Defendants knowingly or intentionally made a claim under the Medicaid program for products that have been adulterated, debased, mislabeled, or otherwise inappropriate regarding Defendants' generic drugs in violation of Tex. Hum. Res. Code §§ 36.002(7)(C) & 36.052.

*FILED UNDER SEAL*

235. Upon information and belief, the State of Texas has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Texas because of these acts by Defendants.

### COUNT FORTY-FIVE

### VIOLATIONS OF THE TEXAS MEDICAID
### FRAUD PREVENTION LAW
### Tex. Hum. Res. Code § 36.002(9)

236. Relator restates and realleges the allegations contained in paragraphs 1-235 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

237. The Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code §§ 36.002(9) & 36.052, provides that a person who knowingly or intentionally enters into an agreement, combination, or conspiracy to defraud the State by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program may be liable for restitution, interest, a civil penalty of not less than $1000 and not more than $15,000 for each unlawful act resulting in an injury, and twice the amount of damages.

238. Upon information and belief, Defendants knowingly or intentionally entered into an agreement, combination, or conspiracy to defraud the State by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program regarding Defendants' generic drugs in violation of Tex. Hum. Res. Code §§ 36.002(9) & 36.052.

*FILED UNDER SEAL*

239. Upon information and belief, the State of Texas has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Texas because of these acts by Defendants.

## COUNT FORTY-SIX

## VIOLATIONS OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT
### Va. Code Ann. § 8.01-216.3(A)(1)

240. Relator restates and realleges the allegations contained in paragraphs 1-239 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

241. The Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(1), provides that a person who knowingly presents, or causes to be presented, to and officer or employee of the Commonwealth a false or fraudulent claim for payment or approval shall be liable to the Commonwealth for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Commonwealth.

242. Upon information and belief, Defendants knowingly presented, or caused to be presented, to and officer or employee of the Commonwealth a false or fraudulent claim for payment or approval regarding Defendants' generic drugs in violation of Va. Code Ann. § 8.01-216.3(A)(1).

243. Upon information and belief, the State of Virginia has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Virginia because of these acts by Defendants.

62

*FILED UNDER SEAL*

## COUNT FORTY-SEVEN

## VIOLATIONS OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT
### Va. Code Ann. § 8.01-216.3(A)(2)

244. Relator restates and realleges the allegations contained in paragraphs 1-243 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

245. The Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(2), provides that a person who knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth shall be liable to the Commonwealth for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Commonwealth.

246. Upon information and belief, Defendants knowingly made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth regarding Defendants' generic drugs in violation of Va. Code Ann. § 8.01-216.3(A)(2).

247. Upon information and belief, the State of Virginia has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Virginia because of these acts by Defendants.

*FILED UNDER SEAL*

## COUNT FORTY-EIGHT

### VIOLATIONS OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT
### Va. Code Ann. § 8.01-216.3(A)(3)

248. Relator restates and realleges the allegations contained in paragraphs 1-247 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

249. The Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(3), provides that a person who conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid shall be liable to the Commonwealth for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Commonwealth.

250. Upon information and belief, Defendants conspired to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid regarding Defendants' generic drugs in violation of Va. Code Ann. § 8.01-216.3(A)(3).

251. Upon information and belief, the State of Virginia has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Virginia because of these acts by Defendants.

## COUNT FORTY-NINE

### VIOLATIONS OF THE UTAH FCA
### Utah Code Ann. § 26-20-3(1)

252. Relator restates and realleges the allegations contained in paragraphs 1-251 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

*FILED UNDER SEAL*

253. The Utah False Claims Act, Utah Code Ann. §§ 26-20-3(1) & 26-20-9.5, provides that a person who makes or causes to be made a false statement or false representation of a material fact in an application for medical benefits shall be liable for restitution, a civil penalty not to exceed three times the value of the improper claim or received payment, and up to $2,000 for each claim filed or act done in violation of this chapter.

254. Upon information and belief, Defendants made or caused to be made a false statement or false representation of a material fact in an application for medical benefit regarding Defendants' generic drugs in violation of Utah Code Ann. §§ 26-20-3(1) & 26-20-9.5.

255. Upon information and belief, the State of Utah has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Utah because of these acts by Defendants.

## COUNT FIFTY

### VIOLATIONS OF THE UTAH FCA
### Utah Code Ann. § 26-20-3(6)

256. Relator restates and realleges the allegations contained in paragraphs 1-255 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

257. The Utah False Claims Act, Utah Code Ann. §§ 26-20-3(6) & 26-20-9.5, provides that a person who enters into an agreement, combination, or conspiracy to defraud the State by obtaining or aiding another to obtain the payment or allowance of a false, fictitious, or fraudulent claim for a medical benefit shall be liable for restitution, a civil

*FILED UNDER SEAL*

penalty not to exceed three times the value of the improper claim or received payment, and up to $2,000 for each claim filed or act done in violation of this chapter.

258. Upon information and belief, Defendants entered into an agreement, combination, or conspiracy to defraud the State by obtaining or aiding another to obtain the payment or allowance of a false, fictitious, or fraudulent claim for a medical benefit regarding Defendants' generic drugs in violation of Utah Code Ann. §§ 26-20-3(6) & 26-20-9.5.

259. Upon information and belief, the State of Utah has sustained damages relating to its portion of Medicaid losses from Medicaid claims filed in Utah because of these acts by Defendants

## PRAYER FOR RELIEF

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants as follows:

a. for full restitution to the United States and the States for all monies wrongfully paid under Medicare, Medicaid, and the Federally-appropriated relief programs such as PEPFAR;

b. for fines, civil penalties, attorneys' fees and costs as provided under Federal and State laws;

c. for three times the amount of damages as provided under the FCA and the State FCAs, or the maximum amount authorized by State law;

*FILED UNDER SEAL*

d.      for judgment to be entered in favor of the United States and Relator including the maximum percentage of proceeds authorized to be paid to Relator under law, plus attorneys' fees, interest, and costs;

e.      for pre-judgment and post-judgment interests at the rates permitted by law; and

f.      for such other and further relief as may be appropriate and authorized by law.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Respectfully submitted,

Robert F. Muse (MD Bar No. 11785)
Ari S. Casper (MD Bar No. 14512)
Andrew M. Beato (MD Bar No. 27112)
David U. Fierst (MD Bar No. 02301)
STEIN, MITCHELL & MEZINES, LLP
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
(202) 737-7777 (telephone)
(202) 296-8312 (fax)
rmuse@steinmitchell.com
acasper@steinmitchell.com
abeato@steinmitchell.com
dfierst@steinmitchell.com

*Counsel for Relator*

April 13, 2007

*FILED UNDER SEAL*